Dear Mayor Cates:
This office is in receipt of your request for an opinion of the Attorney General in regard to use of a sewage line in the Village of Converse without payment of the sewage charge or permit fee. You indicate the individual refuses to pay any part of the sewage charge or permit fee, claiming to have a privileged agreement with a former mayor, but there is no proof or verification for this privilege. You state as follows:
 The owner says that he was paid for the lift pump station located out of place, but not for the route of the sewage line beside his business. He has arranged for equipment to be located in such a way that egress to the pump station currently is often blocked. The alley way over the sewage line is covered with shrubs and trees.
In Atty. Gen. Op. 97-99 this office was told the Town of Jean Lafitte had a new sewer and treatment system and hoped to have 100% participation. The Town wanted to pay for the initial hook-up of approximately $8.00 per foot of potential system customers. The Town asked if it would be permissible for the Town to use its general fund money to pay for these hook-ups. This office stated as follows:
 In accordance with the provisions of Art. VII, § 14, it is our opinion that the Town of Jean Lafitte may not assume the cost of the "hook-up", or installation of lines and equipment on private property of potential sewer customers. Since the Town is under no obligation to provide lines and equipment on private property, the provision of same would be tantamount to a donation. In accord: Atty. Gen. Ops. Nos. 96-348, 90-498, 78-1562.
 Please note that the Town is not prohibited from undertaking the installation of the lines and equipment on the property of a potential customer as long as the Town charges each customer a fee that is sufficient to defray the cost of the installation and materials used to provide that customer's "hook-up". Atty. Gen. Op. No. 95-221.
Therefore, any agreement made with a former mayor or other official would be an illegal donation of public funds if there was nothing given of value by the land owner in exchange.
Similarly, in Atty. Gen. Op. 99-208 this office stated that the Village of Sicily could not exempt or reduce the rates for use of the municipally-owned water, sewer and gas service for churches, nor could they reduce the rates being charged as such would be a violation of Art. VII, § 14 of the Louisiana Constitution.
Accordingly, assuming the individual in question had an agreement for exemption from the costs of a permit and hook-up to the Village sewerage with the former Mayor or other Village official and gave nothing in exchange, it would be invalid, and the payments would be due the Village. If demands are not met for payment, the Village would have to resort to court action for payment. However, If there was something of value given by the land owner then there would not be an illegal donation.
The conclusion as to the proper recourse turns on factual matters about which we are not aware. Pursuant to our conversation you have indicated this happened ten years ago and you were not a party to the occurrence. You also state, "Tthere is no available proof or verification for that privilege."
In Atty. Gen. Op. 98-22 this office observed that the legislature has authorized local governmental units to establish joint billing for water and sewerage, and to provide that the failure to pay for either service may lead to termination of the water supply, R.S. 33:4169. In this regard we do not know if the Village has such an ordinance, but we findCoult v. Mayor and Board of Aldermen, City of Gretna, 11 So.2d 424
(La.App. Orleans 1943). pertinent. Therein the Court stated as follows:
 While a public service corporation has a right to cut off a consumer's supply of water, gas or electricity for nonpayment of the bill or rent therefor, it may not discontinue the service unjustly and without legal right. Any attempt to do so may be prevented by injunction, where there is no adequate legal remedy. Thus, equity will in a proper case restrain the company from shutting off the supply of a consumer to coerce payment of an unjust or disputed bill, for to suddenly shut off the consumer's supply in order to compel payment of an unjust or disputed bill is not only a violation of the consumer's legal rights, but will subject him to serious injury; and such injury as he would sustain before he could be compensated in an action at law even against a solvent corporation is sufficient to furnish the equity for an application for injunctive relief. (Emphasis added.)
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr